*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. A. SMITH, Minor.

UNPUBLISHED
August 27, 2019

No. 347459
Wayne Circuit Court
Family Division
LC No. 17-000650-NA

Before: BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor child, JAS, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions that led to jurisdiction have not been rectified), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that children will be harmed if returned to parent). We affirm.

On appeal, respondent argues that the trial court erred when it terminated her parental rights because clear and convincing evidence of a statutory ground to terminate her parental rights was not established, and the termination of her parental rights was not in JAS's best interests. We disagree.

## I. FACTUAL BACKGROUND

Respondent gave birth to JAS when she was 16 years old and living with her sister, AW. At the time, respondent was a court ward and in the foster care system because her mother, LJW-S, struggled with substance abuse and had abandoned her. When JAS was six months old, AW told respondent that she and JAS could no longer live with her. Soon after, Child Protective Services (CPS) was alerted that respondent recently gave birth to a child and did not have anywhere to live. Through CPS's investigation, it determined that respondent lacked suitable housing and the means to obtain suitable housing

Petitioner, Department of Health and Human Services (DHHS), then filed a petition with the Wayne Circuit Court requesting the court take jurisdiction over JAS pursuant to MCL 712A.2(b)(1) and (2), and issue an order making JAS a temporary court ward. JAS was taken into foster care in April 2017. After the trial court determined that JAS would not be safe in

-1-

respondent's care for the aforementioned reasons, the trial court ordered the DHHS to create a family treatment plan that provided respondent with reunification services that were tailored to her situation.

Over the course of the next several months, respondent's family treatment plan was modified to address additional issues, including respondent's trauma from being abandoned by her mother, sexual abuse, lack of education, and issues with substance abuse. Respondent was placed in a supervised independent living house and given a weekly stipend for food. Respondent was referred to parenting classes, individual therapy sessions, and infant mental health services. Respondent was afforded weekly supervised visitations with JAS.

As time went on, respondent complied less and less with her family treatment plan. Respondent was evicted from her independent living placement and failed to maintain regular contact with DHHS. Respondent stopped attending parenting classes, individual therapy sessions, and school, and stopped participating in infant mental health services. Respondent struggled to maintain employment. On multiple occasions, respondent was under the influence of marijuana when she visited with JAS. Respondent would go missing for weeks at a time. Between July 20, 2018, and October 23, 2018, respondent's whereabouts were unknown. Respondent's visits with JAS became so infrequent that JAS became uncomfortable with respondent and started to exhibit behavior problems after seeing respondent. JAS became more attached to his preadoptive foster parents, who were able to provide JAS a stable home.

On September 19, 2018, DHHS filed a petition for permanent custody and to terminate respondent's parental rights. After a termination/evidentiary hearing, the trial court determined that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), and that termination was in JAS's best interests.

## II. STATUTORY GROUNDS

Respondent first argues that the trial court erred by finding that there were statutory grounds to terminate her parental rights. We disagree.

This Court reviews the trial court's findings regarding statutory grounds for clear error. MCR 3.997(K); *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012). A finding is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been made." *In re Gonzales/Martinez*, 310 Mich App 426, 430-431; 871 NW2d 868 (2015). This Court must defer to the trial court's special ability to judge the credibility of witnesses. *In re Gach*, 315 Mich App 83, 93; 889 NW2d 707 (2016).

When the petitioner seeks permanent termination of parental rights, the petitioner has the burden of showing that the allegations in the petition establish a statutory basis for termination by clear and convincing evidence. MCR 3.977(A)(3); MCR 3.997(E)(3); MCR 3.977(F)(1)(b); MCR 3.977(H)(3)(a); *In re Trejo*, 462 Mich 341, 350, 355; 612 NW2d 407 (2000). Under MCL 712A.19b(1), the trial court must make findings of fact, state conclusions or law, and specify the statutory basis for an order terminating a respondent's parental rights. The petitioner need only establish one statutory ground by clear and convincing evidence to support termination of parental rights. *In re Frey*, 297 Mich App at 244.

-2-

There was clear and convincing evidence to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), which is appropriate when "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*) addresses a situation in which "the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services . . . ." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) (citation and quotation marks omitted). A respondent parent's participation in and completion of certain portions of a family treatment plan is insufficient to avoid termination of parental rights if the respondent parent "fail[s] to demonstrate sufficient compliance with or benefit from those services specifically targeted to address the primary basis for the adjudication . . . ." *In re Frey*, 297 Mich App at 248.

In this case, the primary reasons for bringing JAS within DHHS's care and custody was because respondent lacked suitable housing and was unable to adequately care for JAS. Respondent was a minor and a court ward at the time, thus lacking the familial, financial, and emotional support to care for a newborn child. Since the beginning of these proceedings, DHHS's primary concern was securing stable housing for respondent and assisting her to develop the necessary parenting skills so that she could properly care for JAS. Pursuant to a family treatment plan, respondent was ordered to complete a number of tasks, including: attend parenting classes, individual therapy sessions, substance abuse therapy, and visitations with JAS; undergo psychological and psychiatric evaluations; maintain suitable housing and a legal source of income; and participate in infant mental health services. Despite ample support, respondent failed to complete one aspect of her family treatment plan. At the time of the termination/evidentiary hearing, respondent still lacked suitable housing and appeared to be in a constant state of moving between her aunt's house and LJW-S's house. Respondent also went missing for months at a time. The record demonstrates that the conditions that caused JAS to come within DHHS's care and custody continue to exist.

Respondent argues that she should have been given additional time and support to complete her family treatment plan. However, for nearly two years, respondent missed scheduled appointments without notice, failed to maintain regular contact with DHHS, and disappeared for extended periods of time. The record demonstrates that there is no reasonable likelihood that respondent could rectify her housing and parenting skills within a reasonable amount of time considering JAS's age. Accordingly, the trial court properly determined that there was clear and convincing evidence to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*).

Although this Court need not consider the trial court's termination of respondent's parental rights pursuant to any other statutory ground, we conclude that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*ii*), which is appropriate when:

> Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the

conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

As discussed, the record demonstrates that respondent failed to benefit from any services that specifically addressed the conditions that caused JAS to come within the trial court's jurisdiction. Respondent's status as a minor mother and court ward was of particular concern to the trial court. To address respondent's lack of parental experience and immaturity, respondent was required to complete individual therapy sessions and infant mental health services. Respondent did not participate in or benefit from either service. Respondent also failed to maintain her sobriety, resolve her mental health issues, and tested positive for marijuana during several visitations with JAS. Thus, the trial court properly determined that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*ii*).

There was also clear and convincing evidence to terminate respondent's parental rights pursuant to MCL 712A.19b(3)(j), which is appropriate when "[t]here is a reasonable likelihood, based on the conduct or the capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Respondent's failure to become a better parent, obtain stable housing and employment, remain sober, and address her issues with mental health and substance abuse establishes clear and convincing evidence that there is a reasonable likelihood that JAS will be harmed if returned to respondent's care.[1]

### III. BEST INTERESTS

Respondent next argues that the trial court erred by concluding that the termination of her parental rights was in JAS's best interests. We disagree.

This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016). See also MCR 3.977(K). A finding is clearly erroneous if this Court is left with a "definite and firm conviction that a mistake has been made." *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143

---

[1] MCL 712A.19b(3)(g) has been amended, effective June 12, 2018. See 2018 PA 58. Under the prior version of the statute, the trial court may terminate parental rights if "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). Under the new version of the statute, the trial court may terminate parental rights if "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) as amended by 2018 PA 58. The trial court incorrectly relied on the prior version of MCL 712A.19b(3)(g) to terminate respondent's parental rights by using the language from the prior version. However, the trial court's error was harmless because only one statutory ground is necessary to warrant termination of parental rights. *In re Frey*, 297 Mich App at 244.

(2014). Additionally, this Court must defer to the trial court's "special ability" to evaluate the credibility of witnesses. *Id.*

"Even if the trial court finds that [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App at 434, citing MCL 712A.19b(5) and *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The best-interests analysis focuses on the child rather than the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016), citing *In re Moss*, 301 Mich App at 87. To determine whether the termination of a parent's rights is in the child's best interests, the trial court should weigh all of the available evidence, *In re White*, 303 Mich App at 713, and consider the entire record, including any evidence introduced by any party, *In re Medina*, 317 Mich App at 237, citing *In re Trejo*, 462 Mich at 353. Factors that the trial court may consider in making this determination include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Medina*, 317 Mich App at 237, quoting *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

To conclude that the termination of respondent's parental rights was in JAS's best interests, the trial court relied on the fact that JAS had been in foster care for approximately two years and was reaching an age "where permanent planning is essential for continued growth and development." Respondent's failure to improve herself and her parenting skills demonstrates that she is unable to provide JAS with the stability and permanency that he requires as a young child. At the time of the termination/evidentiary hearing, respondent lacked employment, stable housing, an education, and the necessary parenting skills to care for JAS. Respondent was under the influence of marijuana when she visited with JAS. Respondent failed to address her own mental health issues. Moreover, respondent is a young mother and lacks a support system that would enable her to properly care for JAS. Although respondent's situation is unfortunate, the fact remains that she lacks the ability to provide JAS with a suitable environment.

Although respondent attended 70 out of 95 visitations with JAS, she went missing for long stretches of time. Between July 20, 2018, and October 23, 2018, respondent's whereabouts were unknown. Respondent's prolonged absences and infrequent visits with JAS deteriorated their already-fragile relationship. By November 2018, respondent and JAS no longer shared a bond. Respondent's inconsistent presence in JAS's life caused JAS to exhibit behavioral problems in his foster home. At the time of the termination/evidentiary hearing, JAS was in a preadoptive foster home where his needs were being met. JAS was thriving in his foster home and receiving the care and support that he requires. Accordingly, the trial court correctly concluded that the termination of respondent's parental rights was in JAS's best interests.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Thomas C. Cameron